*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

LEGACY CUSTOM BUILDERS, INC.,

        Plaintiff-Appellant,

v

SALLY A NOERR ROGERS,

        Defendant-Appellee.

FOR PUBLICATION
February 9, 2023
9:15 a.m.

No. 359213
Oakland Circuit Court
LC No. 2021-187535-CH

Before: LETICA, P.J., and SERVITTO and HOOD, JJ.

HOOD, J.

Plaintiff, Legacy Custom Builders, Inc. (Legacy), appeals as of right the trial court's order granting summary disposition and compelling arbitration in favor of defendant, Sally A. Noerr Rogers (Rogers). The trial court correctly enforced a valid agreement to arbitrate, but it should have stayed proceedings pending arbitration instead of dismissing the case. We, therefore, affirm in part, reverse in part, and remand for proceedings consistent with this opinion.

## I. BACKGROUND

This case arises out of a contract dispute over the construction of a home on a vacant residential property in White Lake, Michigan. Rogers is the owner of the property. Legacy is a home construction company.

In July 2020, Rogers contracted with Legacy to build a house on her vacant land. Relevant to this appeal, the contract contained an arbitration provision. Under Article XVI, entitled "Disputes," the contract provided that Legacy and Rogers resolve any dispute through arbitration. In its relevant part, Article XVI stated:

> Any dispute between Builder and Purchaser about this Contract, including the interpretation of this Contract and adequacy of performance of this Contract, shall be resolved by arbitration before a single arbitrator who is mutually acceptable to Builder and Purchaser. . . . The decision of the arbitrator on any dispute shall be final and binding on the parties and enforceable in any court of appropriate jurisdiction. In any arbitration proceeding under this Article subject to the award

-1-

of the arbitrator, each party shall pay its own expenses, [and] an equal share of the fees and expenses of the arbitrator. The arbitrator shall have the power to award recovery of costs and fees (including reasonable attorney fees, administrative fees, and arbitrator's costs and fees) among the parties as the arbitrator determines to be equitable under the circumstances.

In January 2021, the parties had a dispute. Legacy claimed that Rogers failed to pay invoices and failed to make selections and decisions related to work on the project. Rogers disputed invoices, asked for documentation supporting Legacy's invoices, and appears to have sought an accounting to determine how Legacy used money on the project. Through their attorneys, each party accused the other of breaching the contract. Legacy threatened to file a construction lien, and Rogers indicated she was seeking to invoke the arbitration clause of the parties' agreement. On January 12, 2021, Legacy furnished its last labor or supplies on the project.

On February 4, 2021, Legacy recorded a claim of lien related to Rogers's property and later served a copy of the claim of lien on Rogers's attorney. The claim of lien indicated that Legacy had received $548,653.46 related to the construction project, but claimed a lien for $177,905.83, plus interest, costs, and attorneys fees under the contract. The claim of lien indicated that this did not include $232,432.17 "of the contract which was not completed due to the termination of [the] contract."

On April 20, 2021, Legacy filed a complaint suing Rogers. The complaint raised five claims: (1) breach of contract; (2) promissory estoppel; (3) quantum meruit; (4) declaratory relief; and (5) foreclosure of the construction lien. It alleged Rogers breached the parties' contract when she failed to respond to inquiries regarding the construction project and failed to pay various invoices. Based on Rogers's alleged failure to pay Legacy, it also sought foreclosure of the construction lien it recorded against Rogers's property.

In June 2021, in lieu of an answer, Rogers moved for summary disposition of Legacy's complaint under MCR 2.116(C)(7) and (D)(2), and sought to compel arbitration. Rogers argued that summary disposition was appropriate because the parties' contract included an arbitration provision that required the parties to arbitrate "any" dispute arising under the contract between Legacy and Rogers. Rogers asserted that if Legacy continued to refuse to comply with arbitration and continued litigation, Legacy could be held to have waived its right to arbitration. Rogers also sought fees and costs under the contract for Legacy's purported failure to comply with the arbitration agreement.

Legacy responded arguing that enforcing the arbitration agreement would prevent it from complying with the one-year limitation period for recording and foreclosing on a lien even if it was successful. It further argued that the arbitrator did not have authority to determine an interest in land. Finally, it argued that Rogers was required to identify her claims prior to arbitration and that Legacy was not required to arbitrate unknown issues. Legacy also sought sanctions, arguing that Rogers's motion and request for sanctions was frivolous and intended to delay and harass Legacy.

On September 22, 2021, the trial court entered an order granting Rogers's motion for summary disposition and compelling arbitration. The trial court dispensed with oral argument and found that the contract "clearly directs 'any' dispute arising out of the contract be arbitrated." Accordingly, the trial court granted Rogers's motion for summary disposition under MCR 2.116(C)(7) and ordered arbitration.

Legacy moved for reconsideration. In addition to previously raised arguments, Legacy argued that, instead of dismissing its lien foreclosure claim, the trial court should have stayed that portion of the lawsuit and "allowed it to pick back up after" there was an arbitration award. This appears to have been Legacy's first explicit request for the court to stay proceedings. Although Legacy claims to have offered Rogers's counsel to stay proceedings, it did not file a motion to stay proceedings pending arbitration, and it did not request a stay as alternative relief in its response to Rogers's motion for summary disposition. The trial court denied the motion for reconsideration. This appeal followed.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Tinsley v Yatooma*, 333 Mich App 257, 261; 964 NW2d 45 (2020). In *RDM Holdings, Ltd v Continental Plastics Co*, 281 Mich App 678, 687; 762 NW2d 529 (2008), this Court articulated the rules governing dispositive motions filed under MCR 2.116(C)(7):

> Under MCR 2.116(C)(7) . . . , this Court must consider not only the pleadings, but also any affidavits, depositions, admissions, or other documentary evidence filed or submitted by the parties. The contents of the complaint must be accepted as true unless contradicted by the documentary evidence. This Court must consider the documentary evidence in a light most favorable to the nonmoving party. If there is no factual dispute, whether a plaintiff's claim is barred under a principle set forth in MCR 2.116(C)(7) is a question of law for the court to decide. If a factual dispute exists, however, summary disposition is not appropriate. [Citations omitted.]

Summary disposition is proper under MCR 2.116(C)(7) when a claim is barred because of "an agreement to arbitrate . . . ." See *Tinsley*, 333 Mich App at 261, citing *Altobelli v Hartmann*, 499 Mich 284, 294-295; 884 NW2d 537 (2016) (stating the same). "Whether a claim is subject to arbitration is also reviewed de novo, as is the construction of contractual language." *Id*. (citation omitted).

A trial court's decision regarding sanctions is reviewed for an abuse of discretion. *Kaftan v Kaftan*, 300 Mich App 661, 668; 834 NW2d 657 (2013). We will not disturb a trial court's decision on whether to impose sanctions unless it is clearly erroneous. See *Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 730; 909 NW2d 890 (2017). The proper interpretation and application of a court rule is reviewed de novo. *Garrett v Washington*, 314 Mich App 436, 450; 886 NW2d 762 (2016).

## III. LAW AND ANALYSIS

## A. CONSTRUCTION LIENS

The issues in this case revolve around arbitration related to a construction lien. A construction lien is a security interest that a participant on a construction project takes in real property as security for their payment expectations. See MCL 570.1103; MCL 570.1107(1). Construction liens are governed by the Construction Lien Act (CLA), MCL 570.1101 *et seq*. " 'Construction lien' means the lien of a contractor, subcontractor, supplier, or laborer, as described in [MCL 570.1107]." MCL 570.1103. MCL 570.1107(1) states in relevant part:

> Each contractor, subcontractor, supplier, or laborer who provides an improvement to real property has a construction lien upon the interest of the owner or lessee who contracted for the improvement to the real property, . . . the interest of an owner who has subordinated his or her interest to the mortgage for the improvement of the real property, and the interest of an owner who has required the improvement. . . . [MCL 570.1107(1).]

Construction liens, like other security interests, can be resolved through arbitration. See *Ronnisch Const Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544; 886 NW2d 113 (2016). Because they affect real estate titles, however, parties must often look to the circuit court to enforce arbitration awards related to construction liens. See *id.* at 558-562.

## B. THE TRIAL COURT DID NOT ERR BY ENFORCING A VALID ARBITRATION AGREEMENT

Legacy first argues that the trial court erroneously determined that the parties had to arbitrate the claims in this case. We disagree.

"Arbitration is a matter of contract." *Altobelli*, 499 Mich at 295. "[A] valid agreement must exist for arbitration to be binding." *Ferndale v Florence Cement Co*, 269 Mich App 452, 460; 712 NW2d 522 (2006). In *Lichon v Morse*, 507 Mich 424, 437; 968 NW2d 461 (2021), our Supreme Court recognized that "[a] party cannot be required to arbitrate an issue which [it] has not agreed to submit to arbitration." (Alterations in original.) "The existence of an arbitration agreement and the enforceability of its terms are judicial questions for the court, not the arbitrators." *Fromm v Meemic Ins Co*, 264 Mich App 302, 305; 690 NW2d 528 (2004).

"[W]hen interpreting an arbitration agreement, we apply the same legal principles that govern contract interpretation." *Altobelli*, 499 Mich at 295 (citation omitted). "Our primary task is to ascertain the intent of the parties at the time they entered into the agreement, which we determine by examining the language of the agreement according to its plain and ordinary meaning." *Id.* (citation omitted).

> The general policy of this State is favorable to arbitration. The burden is on the party seeking to avoid the agreement, not the party seeking to enforce the agreement. In deciding the threshold question of whether a dispute is arbitrable, a reviewing court must avoid analyzing the substantive merits of the dispute. If the dispute is arbitrable, the merits of the dispute are for the arbitrator. [*Id.* at 295-296 (quotation marks and citations omitted).]

Ascertaining the arbitrability of an issue requires a court to consider whether the parties' contract contains an arbitration provision, whether the disputed issue arguably comes within the arbitration clause, and whether the dispute is expressly exempted from arbitration by the contract. *Fromm*, 264 Mich App at 305-306 (citation omitted).

Here, the court correctly enforced the arbitration agreement. The plain and ordinary meaning of the disputes provision in the parties' contract demonstrates an intent by Legacy and Rogers to arbitrate any dispute arising under the contract. The dispute provision states, in relevant part: "Any dispute between Builder and Purchaser about this Contract, including the interpretation of this Contract and adequacy of performance of this Contract, shall be resolved by arbitration before a single arbitrator who is mutually acceptable to Builder and Purchaser." This language is unambiguous: any dispute arising between Legacy and Rogers had to be submitted to arbitration for resolution by an arbitrator agreed upon by both parties. Thus, the parties' contract had a broad arbitration provision that included any dispute between the parties, and there are no express exemptions from arbitration mentioned in the contract. See *Fromm*, 264 Mich App at 305-306. Accordingly, the trial court did not err in finding that the parties' claims had to be submitted to arbitration.

Legacy argues that Rogers has never identified the specific dispute that must be submitted to arbitration, and that this prevents the parties from arbitrating. This argument fails for four reasons. First, nothing in the arbitration clause requires a party to identify the specific dispute subject to arbitration as a threshold to filing an arbitration claim. Second, contrary to Legacy's argument, Rogers has identified the disputed issues. In an exchange of letters between January and February 2021, Legacy's counsel noted that Rogers disputed a specific invoice. In a separate letter, Rogers's counsel articulated her dispute, indicating that Rogers was concerned about Legacy's use of the money she had already paid and sought documentation and an accounting to determine how Legacy used the money. Rogers, therefore, already identified the issues on some level. Third, even if Rogers's counsel had not identified the issues in their correspondences, the disputed issues are obvious from a cursory review of the facts. They include whether Legacy performed the agreed upon work, whether Rogers failed to pay, and whether Legacy had a reason to stop performing under the contract. In other words, it is a breach of contract case. And fourth, the arbitrator may evaluate a purported failure to identify the particular issues in dispute, rather than the trial court. See *Fed Kemper Ins Co v American Bankers Ins Co of Florida*, 137 Mich App 134, 139; 357 NW2d 834 (1984) ("If a claim on its face is governed by the contract, it should be decided by the arbitrator unless strong evidence demonstrates that the matter is outside the scope of the arbitration provision.") (Quotation marks and citation omitted).[1] Here, the broad arbitration clause in the parties' contract governs any dispute between Rogers and Legacy. There is no dispute that the contract containing the arbitration clause applied to the parties' commercial relationship. The relevant issue is simply whether Rogers's particular grievance fell within the terms of the arbitration clause. The breadth of the arbitration clause and apparent consensus that the issues

---

[1] Although *Fed Kemper Ins Co* is not strictly binding pursuant to MCR 7.215(J)(1) because it was issued before November 1, 1990, as a published opinion, it nevertheless "has precedential effect under the rule of stare decisis" pursuant to MCR 7.215(C)(2). This also applies to other pre-November 1, 1990 cases of this Court cited in this opinion.

arise out of the contract means that the failure to identify a precise issue does not exempt this case from arbitration.

## C. THE TRIAL COURT ERRED BY GRANTING SUMMARY DISPOSITION INSTEAD OF STAYING THE PROCEEDINGS PENDING ARBITRATION

Legacy argues that the trial court erroneously dismissed the lien foreclosure portion of the case. We agree. Although the trial court correctly enforced the arbitration agreement, it erred when it summarily dismissed Legacy's lien foreclosure claim. See MCL 691.1687(6) (requiring the court to stay a proceeding involving a claim alleged to be subject to arbitration until it renders a final decision, if a party moves for an order to arbitrate) and (7) (requiring the court, if it orders arbitration, to stay proceeding involving a claim subject to arbitration and allowing it to limit a stay to any severable issue); MCR 3.602(C) (requiring a stay in an action involving an issue subject to arbitration if an order for arbitration or a motion for such an order has been made). Instead of dismissing the claim, the Uniform Arbitration Act (UAA), MCL 691.1681 *et seq*., and Michigan Court Rules both required the trial court to stay the lawsuit pending arbitration. See MCL 691.1687; MCR 3.602(C). Had the trial court stayed the lawsuit pending arbitration, instead of dismissing, it would have enforced the arbitration agreement while protecting Legacy's compliance with the limitations period and ability to enforce the lien after arbitration.

At the threshold, Legacy argues that foreclosure of the construction lien had to occur within one year to comply with the limitations period. This is incorrect. Legacy was required to file its suit within one year of recording its lien, but the statute of limitations does not require a case to be completed within that time. See MCL 570.1111(1) (providing a 90-day threshold period of limitations for recording a lien); MCL 570.1117(1) (providing a one-year period of limitations for filing suit to foreclose interest subject to the lien).

Construction liens have two periods of limitations: a threshold period of limitations for recording the lien, and a period for filing suit to foreclose the lien. See MCL 570.1111(1); MCL 570.1117(1). The right to a construction lien "shall cease to exist unless, within 90 days after the lien claimant's last furnishing of labor or material" on the improvement, pursuant to the lien claimant's contract, the lien claimant records a claim of lien with the register of deeds in the county in which the property is located. MCL 570.1111(1). In general, "[p]roceedings for the enforcement of a construction lien and the foreclosure of any interests subject to the construction lien shall not be brought later than 1 year after the date the claim of lien was recorded." MCL 570.1117(1). This second period of limitations relates to the time for commencing a lawsuit, not completing it or obtaining a final order or judgment. See *id*.

Legacy last provided labor and materials on January 12, 2021. It, therefore, had until April 12, 2021, to record its claim of lien. Legacy recorded its claim of lien on February 4, 2021, so it complied with MCL 570.1111(1). Legacy then had until February 4, 2022, to file a lawsuit to foreclose on the lien. See MCL 570.1117(1). It, therefore, complied with this second period of limitations. There is nothing in MCL 570.1117(1) that requires the proceedings for the enforcement of a construction lien and foreclosure of the lien be adjudicated within one year. Rather, the case must simply be filed within that one year to avoid being barred by the one-year limitations period. Legacy complied with that requirement when it filed its complaint on April 20,

2021, well within the one-year limitations period. Sending the case to arbitration would not affect its ability to comply with the limitations period.

This only becomes an issue, where, as here, the trial court dismisses the suit to foreclose the construction lien, instead of staying it. Both the UAA and the court rules require the court to stay proceedings in this instance. See MCL 691.1687; MCR 3.602(C). MCL 691.1687, which deals with orders to compel or stay arbitration under the UAA, provides, in relevant part:

> (6) If a party moves the court to order arbitration, the court on just terms shall stay any judicial proceeding that involves a claim alleged to be subject to the arbitration until the court renders a final decision under this section.

> (7) If the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration. If a claim subject to the arbitration is severable, the court may limit the stay to that claim. [MCL 691.1687(6) and (7).]

Under these subsections, the trial court was required to stay the judicial proceedings as it related to any claim subject to arbitration. Under MCL 691.1687(6), when Rogers moved to compel arbitration, the trial court had to stay the proceedings until it rendered a final decision on the issue. And when it decided to order arbitration, it should have stayed the judicial proceedings involving any claim subject to arbitration—including the lien foreclosure claim—under MCL 691.1687(7). Its failure to stay the proceedings went against the plain language of MCL 691.1687(6) and (7). Similarly, MCR 3.602(C) requires a court to stay proceedings when issuing an order to compel arbitration. Accordingly, the trial court erred in granting summary disposition in Rogers's favor.

The trial court's dismissal of the lien foreclosure claim and order of arbitration, instead of staying the claim, was also incorrect because arbitration does not toll the limitations period. See MCL 600.5856 (tolling of statute of limitations or repose);[2] *Mair v Consumers Power Co*, 419 Mich 74, 83-85; 348 NW2d 256 (1984) (concluding that an administrative action did not toll the statute of limitations and that "the structure of the tolling statute precludes the conclusion that the

---

[2] MCL 600.5856 provides:

> The statutes of limitations or repose are tolled in any of the following circumstances:

> (a) At the time the complaint is filed, if a copy of the summons and complaint are served on the defendant within the time set forth in the supreme court rules.

> (b) At the time jurisdiction over the defendant is otherwise acquired.

> (c) At the time notice is given in compliance with the applicable notice period under section 2912b, if during that period a claim would be barred by the statute of limitations or repose; but in this case, the statute is tolled not longer than the number of days equal to the number of days remaining in the applicable notice period after the date notice is given.

Legislature intended it to include nonjudicial activity as tolling events"); see also *James v Logee*, 150 Mich App 35, 38-39; 388 NW2d 294 (1986) (citing *Mair* and concluding that jurisdiction was not otherwise acquired through the defendants' participation in nonjudicial proceedings before the Board of Realtors); *Varga v Heritage Hosp*, 139 Mich App 358, 359-361; 362 NW2d 282 (1984) (discussing *Mair* and noting persuasiveness of policy arguments for allowing an arbitration proceeding to qualify as a tolling event but declining to create an exception to the statute of limitations). If a lienholder timely records a claim of lien and timely files suit to foreclose on the lien, but the court dismisses the suit due to a valid arbitration clause, the lienholder's claims may end up time barred because arbitration does not toll the statute of limitations pending arbitration.

If left uncorrected, that is likely what would happen here. As stated, Legacy had until February 4, 2022, to file its complaint to foreclosure the construction lien. See MCL 570.1117(1). The trial court entered its order dismissing Legacy's complaint and compelling arbitration on September 22, 2021. Legacy then moved for reconsideration, which the trial court denied on October 21, 2021. There are 135 days between September 22, 2021, and February 4, 2022, and 106 days between October 21, 2021, and February 4, 2022. The parties, therefore, had between 3½ and 4½ months to arbitrate their claims before Legacy would have had to file suit to enforce the lien and for foreclosure. In light of MCR 3.602(C), MCL 691.1687(6) and (7), MCL 600.5856, and *Mair* (and its progeny), the trial court should have stayed the proceedings related to Legacy's lien foreclosure claim and sent the case to arbitration. Afterward, the parties could return to the trial court to enforce the arbitration award and address the lien.

Rogers, relying on *Lockwood Building Co v Dempsey*, unpublished per curiam opinion of the Court of Appeals, issued December 30, 2003 (Docket No. 241508), argues that this Court has already rejected an argument similar to Legacy's argument that the one-year limitations period, and the fact that an arbitrator cannot determine an interest in land, renders its foreclosure claim unsuitable for arbitration. *Lockwood* involved a residential construction agreement that contained an arbitration provision nearly identical to the one at issue here. *Lockwood*, unpub op at 1. As here, the relationship between the *Lockwood* plaintiff and defendants broke down. *Id*. There, the plaintiff builder demanded arbitration, and the defendant homeowners answered that demand and filed a counterclaim for breach of contract. *Id*. The case proceeded to arbitration, and the arbitrator issued an award. *Id*. at 2. The arbitrator determined that the plaintiff's claim of lien was valid and that "the lien should be considered foreclosed by the arbitration." *Id*. After the award was handed down, the plaintiff filed a petition seeking entry of a judgment confirming the award. *Id*. The trial court ordered the defendants to pay plaintiff the amount awarded by the arbitrator, plus fees and interest. *Id*. at 2-3.

On appeal, this Court rejected the *Lockwood* defendants' argument that the arbitrator lacked jurisdiction to determine the validity of the lien or foreclose on it. *Id*. at 7-8. The *Lockwood* Court reasoned that there was no dispute over ownership of the property and the arbitrator was "not deciding title to the property," but rather was "simply deciding if a lien existed." *Id*. at 8.

The *Lockwood* defendants, like Legacy here, argued that MCL 570.1118(1)[3] gives the circuit court exclusive jurisdiction. *Id*. at 8-9. This Court, however, concluded that the statute, read as a whole, "addresse[d] which county the action shall be brought in, not which court." *Id*. at 9.

Rogers's reliance on *Lockwood* is misplaced for three reasons. First, *Lockwood* is an unpublished decision of this Court. Accordingly, although it may be considered for its persuasive value, it is not binding on this Court. See MCR 7.215(C)(1); *Broz v Plante & Moran, PLLC*, 331 Mich App 39, 47 n 1; 951 NW2d 64 (2020). Second, *Lockwood* differs from this case because, there, the defendants contested an arbitrator's decision and award amount after arbitration took place. See *Lockwood*, unpub op at 1. Here, arbitration has not even started. Third, and most importantly, this Court has already recognized that an arbitrator may properly rule on the validity of, and the amount owed under, a construction lien. See, e.g., *Ronnisch*, 306 Mich App at 214. See also *TSP Servs, Inc v Nat'l-Standard, LLC*, 329 Mich App 615, 622-623; 944 NW2d 148 (2019) (an arbitrator may properly determine damages at issue under a construction lien, up to the amount due under the related contract). *Lockwood* is inapplicable and unpersuasive.

Under the court rules and the relevant portions of the UAA, the trial court should have stayed the proceedings on its own or in response to Legacy's motion for reconsideration. We, therefore, reverse the trial court's decision dismissing Legacy's suit.

## D. THE TRIAL COURT DID NOT ERR BY DENYING REQUESTED SANCTIONS

Legacy argues that the trial court should have sanctioned Rogers and her attorneys because one of her former attorneys falsely certified that he contacted Legacy's attorney before filing Rogers's motion for summary disposition. We disagree. Legacy failed to present any evidence below that the praecipe filed by Rogers's former attorney was false and the trial court did not abuse its discretion in failing to sanction Rogers or her attorneys.

Here, Legacy argues that sanctions were appropriate under MCR 1.109. MCR 1.109 provides for sanctions for a violation of the court rule related to signatures and states, in relevant part:

(5) Effect of Signature. The signature of a person filing a document, whether or not represented by an attorney, constitutes a certification by the signer that:

(a) he or she has read the document;

(b) to the best of his or her knowledge, information, and belief formed after reasonable inquiry, the document is well grounded in fact and is warranted by

---

[3] MCL 570.1118 states, in relevant part: "An action to enforce a construction lien through foreclosure shall be brought in the circuit court for the county where the real property described in the claim of lien is located."

existing law or a good-faith argument for the extension, modification, or reversal of existing law; and

(c) the document is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

(6) Sanctions for Violation. If a document is signed in violation of this rule, the court, on the motion of a party or on its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including reasonable attorney fees. The court may not assess punitive damages.

Legacy also references Oakland Circuit Court Local Rule 2.119, which relates to motion practice and states, in relevant part:

(B) Motion Praecipe; Motion Certification by Attorney.

(1) A motion praecipe must be filed at least 7 days before the hearing.

(2) Motion certification by attorney.

(a) The following certificate signed by the attorney of record or by the party in propria persona shall be attached to or incorporate in the praecipe filed with the assignment clerk:

I HEREBY CERTIFY that I have made personal contact with _____on_____, ____, requesting concurrence in the relief sought with this motion and that concurrence has been denied or that I have made reasonable and diligent attempts to contact counsel requesting concurrence in the relief sought with this motion. [6th Circuit LCR 2.119(B).]

The trial court did not abuse its discretion in failing to sanction Rogers or her attorneys for three reasons. First, Legacy did not provide evidence supporting its argument. It did not present to the trial court any evidence—such as an affidavit from its attorney or email conversations between Legacy's attorneys and Rogers's attorneys related to the allegedly false certification—to support its request for sanctions. Second, Legacy argued that the praecipe was false because Rogers's former attorney, Lawrence Gaad, "certified [that] he made personal contact with [Legacy's attorney] regarding the instant Motion when he did not . . . ." The statement in 6th Circuit LCR 2.119(B)(2)(a) has two, alternative prongs, however. It requires the attorney to certify that they have *either* made personal contact with opposing counsel requesting concurrence in the motion at issue and concurrence was denied, *or* they made reasonable and diligent attempts to contact opposing counsel requesting concurrence in the relief sought in the motion. *Id.* The second prong of the local rule does not require actual contact be made, only that the attorney diligently attempted to contact opposing counsel to request concurrence. See *id.* Third, there was not yet an adjudication of the merits. If the trial court determines, once arbitration is complete and the case returns to the circuit court, that there was noncompliance on Rogers's part, then perhaps sanctions

would be appropriate. But without having yet reached the merits of the case, we cannot conclude that the trial court abused its discretion in deciding not to award sanctions in Legacy's favor.

## IV. CONCLUSION

For the reasons stated above, we affirm in part and reverse in part. We affirm the trial court's enforcement of the valid arbitration agreement. We reverse the trial court's decision to grant summary disposition. The court should have stayed proceedings pending arbitration. We affirm the trial court's decision not to impose sanctions. We remand for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Noah P. Hood
/s/ Anica Letica
/s/ Deborah A. Servitto

-11-